# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**                                    **Case No. 24-CR-28**

**QIAN L. COLLINS, et al.,**

**Defendants.**

## RECOMMENDATION AND ORDERS REGARDING THE DEFENDANTS' PRETRIAL MOTIONS

### 1. Procedural History

On February 13, 2024, a grand jury in this district returned a thirty-two-count indictment charging defendants Qian Collins, Shannon Wilder, Maurice Hampton, Jr., Brianna Madden and six others with various violations of federal law. (ECF No. 42.) The charges in the indictment allege that the defendants and others engaged in a drug trafficking conspiracy, including firearms offenses.

Count One alleges a drug trafficking conspiracy involving all ten defendants beginning in at least July 2022 and continuing until on or about February 7, 2024. (ECF No. 42 at 1-2.) Count Two charges Collins, Wilder, Hampton, and others with using a

communication facility to facilitate the drug trafficking offense. (*Id.* at 3.) Counts Six, Ten, Eleven, and Twelve charge Collins, Wilder, and Hampton, respectively, with distribution of fentanyl. (*Id.* at 7, 11, 12, 13.) Count Thirty-Two charges Madden with maintaining a drug premise. (*Id.* at 33.)

The defendants are also each charged with violations related to contraband located in their residences, consistent with drug trafficking, in Counts Fourteen through Nineteen and Counts Twenty-Nine and Thirty. (ECF No. 42 at 15-31 (charging Collins and Madden in Counts Fourteen and Sixteen, Collins in Count Fifteen, Wilder in Counts Seventeen through Nineteen, and Hampton in Counts Twenty-Nine and Thirty).)

Wilder, Hampton, Collins, and Madden have filed preliminary motions. (ECF Nos. 118, 142, 143, 144, 145, 158, and 159.) The remaining alleged co-conspirators did not file motions: two have pleaded guilty (ECF Nos. 157, 175) and the government represents that the remaining alleged co-conspirators' matters are on a resolution track (ECF No. 171 at 8). The government filed a consolidated response to the defendants' pretrial motions. (ECF No. 171.) Collins and Hampton filed a reply (ECF Nos. 172, 173); Wilder and Madden did not.

**2. Facts**

The following facts are taken largely from the government's brief (ECF No. 171), which relies primarily on the criminal complaint (ECF No. 2). Additional facts in the defendants' briefs are also considered (ECF Nos. 118, 143-1, 144, 145, 158, and 159.)

The indictment relates to events stemming from an investigation that began in July 2022 by the Drug Enforcement Agency, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the Waukesha Metro Drug Unit. (ECF No. 171 at 2 (citing the Complaint at ECF No. 2).) Case agents identified what the government calls the "Collins drug trafficking organization" ("DTO") through connections to other armed drug trafficking organizations ("ADTO"). (*Id.* (listing connections with Azjuan Meriwether, Dontrell Franklin, Daniel Rodriguez-Perez, and others in the Meriwether ADTO, *see United States v. Meriwether et al.*, 23-cr-69).) A telephone number associated with Collins was in frequent contact with the other ADTOs, and several confidential informants stated that Collins and his DTO were engaged in large-scale drug trafficking with the other ADTOs. (*Id.* at 3.) A confidential informant stated that Collins would provide the Collins DTO, including Wilder and Hampton, drug phones to sell controlled substances; and the DTO often performed their drug transactions near Madden's store, Cellular Journie, at which some DTO members claimed to be employed. (*Id.*)

### 2.1. Defendants' Activity

While investigating the Collins DTO, case agents used confidential sources to participate in controlled buys with the DTO members. (ECF No. 171 at 3.) The confidential sources and an undercover officer participated in approximately 15 controlled buys with the DTO members, including Collins, Wilder, and Hampton. (*Id.*) Between July 2022 and December 2023 the confidential sources and undercover officer obtained approximately 170 grams of heroin (which field tested positive for fentanyl), 36.1 grams of methamphetamine, and 40.3 grams of cocaine from the Collins DTO. (*Id.*) These transactions included two controlled buys with Collins (20.2 grams of fentanyl), a controlled buy with Wilder (25.6 grams of fentanyl), and a controlled buy with Hampton and another individual (28.9 grams of fentanyl). (*Id.* at 3-4.)

Madden, Collins's girlfriend and the mother of his children, ran the business Cellular Journie, which case agents identified as being used for drug trafficking along with the residence Madden shares with Collins. (ECF No. 145 at 3; ECF No. 171 at 4.) Madden also rented vehicles which Collins used during the controlled drug buys. (ECF No. 171 at 4.)

### 2.2. Search Warrant Executions

On February 7, 2024, several search and arrest warrants were executed for the arrest of DTO members and the search of their residences. (ECF No. 171 at 5.)

A search of Collins's and Madden's residence resulted in the seizure of the following items: 21 grams of cocaine base, 20.924 grams of fentanyl, 1.227 grams of cocaine and methamphetamine, a loaded rifle, a loaded handgun with the serial number removed, ammunition, $80,700 in cash, multiple cell phones, vacuum sealers, scales and blenders, N-95 masks (which are used when mixing controlled substances), lactose (which is used for cutting heroin and fentanyl), multiple baggies (including baggies containing controlled substances), a glass measuring cup with controlled substances inside, a pill press, and items related to a Milwaukee-based street gang, "3278". (ECF No. 171 at 4-5.)

A search of Wilder's residence[1] resulted in the seizure of the following items: firearms, two Glock machinegun conversion devises, a ballistic vest, two loaded firearms, additional magazines, multiple cellphones, $5,000 in cash, ties between Wilder and Madden's cellphone business, gang related jewelry, and identifiers for Wilder. (ECF No. 171 at 5-6.)

A search of Hampton's residence resulted in the seizure of the following items: over $33,000 in cash, 38.963 grams of cocaine base, 240.1 grams of powder cocaine, 10.83 grams of fentanyl, six firearms (including two loaded Glocks, two loaded Smith and Wessons, and a rifle with a loaded extended magazine), numerous cell phones, rubber

---

[1] Wilder states that this is "Ms. Smith['s]" residence, and the government must establish he "stayed there from time to time with Ms. Smith and her children[.]" (ECF No. 159 at 3-4.)

gloves, scales, lactose, glass measuring cups, masks and zip lock bags, and identifiers for Hampton. (ECF No. 171 at 6.)

### 2.3. Communication Between Defendants

The defendants and the government point to certain messages between the defendants that the government suggests demonstrate the defendants' involvement with the DTO. (ECF No. 143 at 2-3; ECF No. 143-1 at 2-4; ECF No. 144 at 3; ECF No. 158 at 2; ECF No. 171 at 7-8.) This includes messages between Collins and Franklin, between Collins and Rodriguez-Perez, between Collins and Madden (including discussing Hampton), between Collins and Wilder, and between Collins and Hampton. (ECF No. 171 at 7-8.) The messages include things like photographs of alleged contraband and alleged references to drug transactions. (ECF No. 171 at 7-8; ECF No. 143 at 2-3.)

## 3. Analysis

### 3.1. Wilder's Motion for a Bill of Particulars (ECF No. 118)

Wilder filed a motion for a bill of particulars regarding Count 19, charging him with possession of a firearm in furtherance of a drug conspiracy in violation of Title 18, United States Code, Section 924(c)(1)(A)(i). He requests the Court order the government to disclose all instances in which it alleges he possessed a firearm in furtherance of a drug trafficking offense, all individuals with knowledge that he possessed a firearm in furtherance of the crime, the locations at which he possessed a firearm in furtherance of

the crime, and the firearms he is alleged to have possessed in furtherance of the crime. (ECF No. 118 at 2.)

The government responds that Wilder is not entitled to a bill of particulars because the indictment, discovery provided pursuant to the United States' open file policy, and the detailed criminal complaint sufficiently apprise him of the charges against him. (ECF No. 171 at 8-9.)

Wilder did not file a reply.

Federal Rule of Criminal Procedure 7(f) permits the court to order the government to provide a defendant with a bill of particulars. "The purposes of a bill of particulars are to inform the defendant of the nature of the charge against her to enable her to prepare for trial, to avoid or minimize the danger of surprise at time of trial, and to enable her to plead acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite." *United States v. Brown*, No. 14-cr-82, 2015 WL 269205, at *4 (E.D. Wis. Jan. 21, 2015) (citing *United States v. Roman*, 728 F.2d 846, 856 (7th Cir. 1984)). "Whether to require a bill of particulars rests within the sound discretion of the district court." *United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003).

The "bill-of-particulars analysis is similar to the constitutional sufficiency-of-the-indictment analysis; 'in both cases, the key question is whether the defendant was sufficiently apprised of the charges against him in order to enable adequate trial

preparation.'" *United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013) (quoting *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008)). "[A] bill of particulars [is] unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense." *Hernandez*, 330 F.3d at 975. "Information relevant to the preparation of a defense includes the elements of each charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the statute or statutes violated." *Blanchard*, 542 F.3d at 1140; *see also United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003).

"Where the indictment fails to provide the full panoply of such information, a bill of particulars is nonetheless unnecessary if the information 'is available through some other satisfactory form,' such as discovery.'" *Blanchard*, 542 F.3d at 1140 (quoting *Hernandez*, 330 F.3d at 975); *see also Vaughn*, 722 F.3d at 927. Moreover, while a defendant is entitled to know the offense with which he is charged, the government need not disclose all the details of how it will prove its case. *Blanchard*, 542 F.3d at 1141 (citing *Fassnacht*, 332 F.3d at 445); *see also United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981) ("It is established that 'a defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case.'" (quoting *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979))); *United States v. Douglas*, No. 5-cr-21, 2005 U.S. Dist. LEXIS 13163, at *12 (W.D. Wis. June 27, 2005) (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)) ("[A] bill of particulars under F. R. Crim.

Pro. 7(f) is not designed to provide the defendant with a detailed disclosure of the government's witnesses, legal theories or evidentiary detail."). Thus, a motion for a bill of particulars should not be confused with a request to admit or an interrogatory; it is not a discovery tool. *See United States v. Vest*, No. 6-cr-30011, 2006 WL 2135760, at *3 (S.D. Ill. July 28, 2006).

The indictment includes the elements of the charged offense and citation to the relevant statute, 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 42 at 20 ("knowingly possessed a firearm in furtherance of the drug trafficking offense charged in Count One of this Indictment").) Count One further identifies the relevant dates of the conspiracy. (*Id.* at 1-2.) The detailed, 163-page criminal complaint further details Wilder's involvement, including the times and places of his conduct. (ECF No. 2.) This information is also included in the government's briefing to the court. (ECF Nos. 72, 83, 171.) Wilder also has the search warrants relating to the offense. Furthermore, Wilder has access to information produced by the government pursuant to its open file discovery policy.

Wilder's motion for a bill of particulars (ECF No. 118) will be denied.

### 3.2. Wilder's Motion to Dismiss Count 19 (ECF No. 159)

Wilder also filed a motion to dismiss Count 19 of the indictment, charging him with possession of a firearm in furtherance of a drug conspiracy. (ECF No. 159 at 1.) He argues that there is no evidence he had a firearm during the alleged controlled buy on October 6, 2023, and there is no factual nexus between the charge of drug possession

with intent to distribute and the guns seized in the search of the 60th Street residence at which the government contends he resided. (ECF No. 159 at 4.) Thus, he argues that, "without more evidence of possession of a firearm 'in furtherance' of [the] alleged drug crime, Count []19 fails." (*Id.* at 4.)

The government responds that Count 19 need only allege the elements of 18 U.S.C. § 924(c), which it does. (ECF 171 at 13.) It states that "Wilder's motion is really a challenge to the sufficiency of the United States' evidence[,]" an issue for trial. (ECF No. 171 at 13.)

Wilder did not file a reply.

Under Fed. R. Crim. P. 7(c)(1), the indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). On a pretrial motion to dismiss, "[a]n indictment is reviewed on its face, regardless of the strength or weakness of the government's case." *White*, 610 F.3d at 958.

Wilder argues that the government needs to show whether he possessed a firearm in "furtherance of a drug trafficking crime" and that the government does not satisfy the eight-factor test for assessing whether the firearm was possessed in

furtherance of another crime. (ECF No. 159 at 2-4 (citing *United States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005)).)

But, as the Seventh Circuit pointed out in *United States v. Castor*, 558 F.2d 379, 384 (7th Cir. 1997),

> [t]he question is not whether the indictment particularly alleges sufficient facts from which a jury could find that the [firearms] were [used] in furtherance of the [drug trafficking conspiracy], but rather whether the Government conceivably could produce evidence at trial showing that the [firearms] were for the purposes of executing the [conspiracy].

*Id.* (citing *United States v. Sampson*, 371 U.S. 75, 76 (1962)). "The resolution of the ['in furtherance of'] question … must await trial 'unless it so convincingly appears on the face of the indictment that as a matter of law there need be no necessity for such delay.'" *Id.* (quoting *United States v. Feinberg*, 50 F. Supp. 976, 977 (E.D.N.Y. 1973)).

Wilder essentially asks the Court to look beyond the face of the indictment and step into the shoes of the jury to weigh the facts of the case. But "the court cannot foray into factual assumptions or findings on a motion to dismiss the indictment." *United States v. Bryant*, No. 13-cr-14, 2013 WL 3423275, at *6 (E.D. Wis. Jul. 8, 2013), *adopting recommendation*. The face of the indictment adequately sets forth the crimes charged and is not so obviously deficient that the government could not conceivably produce evidence of the crimes at trial. "Where, as here, the pretrial defense claim 'is substantially intertwined with the evidence concerning the alleged offense, the motion

to dismiss falls within the province of the ultimate finder of fact.'" *Bryant*, 2013 WL 3423275, at *6 (quoting *United States v. Yasak*, 884 F.2d 996, 1001 n.3 (7th Cir. 1989)).

Thus, the Court will recommend that Wilder's motion to dismiss Count 19 (ECF No. 159) be denied.

### 3.3. Severance

Hampton, Collins, Madden, and Wilder each filed a motion to sever. (ECF Nos. 143, 144, 145, and 158.)

Federal Rule of Criminal Procedure 8(b) permits charging two or more individuals in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The Court of Appeals for the Seventh Circuit has interpreted this as a requirement that the offenses in the indictment emerge from "a common plan or common scheme," *United States v. White*, 737 F.3d 1121, 1132 (7th Cir. 2013) (quoting *United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985)), or "well up out of the same series of … acts." *United States v. Marzano*, 160 F.3d 399, 401 (7th Cir. 1998). Precedent from the Seventh Circuit "make[s] plain that there is a strong policy preference in favor of the joinder of qualifying charges and that the rule must be broadly construed," *United States v. Alexander*, 135 F.3d 470, 476 (7th Cir. 1998), "in order to enhance judicial efficiency," *United States v. Nettles*, 476 F.3d 508, 516 (7th Cir. 2007) (quoting *United States v. Stillo*, 57 F.3d 553, 556 (7th Cir. 1995)).

An indictment that charges a single conspiracy alleges "the same series of acts (the exact same acts, as a matter of fact)." *Velasquez*, 772 F.2d at 1353. Thus, "[i]t is well-established that a conspiracy charge is a proper basis for joinder under Rule 8(b)." *United States v. Garner*, 837 F.2d 1404, 1412 (7th Cir. 1987) (citing *United States v. Dounias*, 777 F.2d 346, 348 (7th Cir. 1985)); *see also Stillo*, 57 F.3d at 557. A joint trial of all defendants charged in a single conspiracy is presumptively appropriate. *United States v. Bond*, 847 F.2d 1233, 1240 (7th Cir. 1988).

Because the defendants are each charged with a single underlying conspiracy in Count One, they are properly joined under Rule 8(b). The defendants do not contend otherwise. Rather, they argue that they would be prejudiced by a joint trial, justifying severance. (ECF No. 143-1 at 1; ECF No. 144 at 5; ECF No. 145 at 3; ECF No. 158 at 3.)

Even when joinder is proper under Rule 8, a court has the discretion to order separate trials when "joining offenses … for trial appears to prejudice a defendant." Fed. Crim. P. 14(a). The burden is on the defendant to make a "strong showing of prejudice," *United States v. Moya-Gomez*, 860 F.2d 706, 768 (7th Cir. 1988), which requires showing more than that conducting separate trials increases the defendant's chances of obtaining an acquittal, *United States v. Ervin*, 540 F.3d 623, 629 (7th Cir. 2008). The defendant "must rebut the dual presumptions that a jury will (1) capably sort through the evidence and (2) follow limiting instructions from the court to consider each [count] separately." *Stillo*, 57 F.3d at 557.

Severance under Rule 14 is required only if the defendant cannot receive a fair trial absent severance. *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000); *see also White*, 737 F.3d at 1133. "[A] simple disparity in the evidence" is insufficient to support a motion for severance. *United States v. Caliendo*, 910 F.2d 429, 438 (7th Cir. 1990); *see also United States v. Del Valle*, 674 F.3d 696, 705 (7th Cir. 2012) (citing *United States v. Serpico*, 320 F.3d 691, 696 (7th Cir. 2003)). "There will inevitably be some differences among defendants tried together." *United States v. Benabe*, 436 F. App'x 639, 646 (7th Cir. 2011).

### 3.3.1. Spillover Prejudice

Defendants Collins, Madden, and Wilder argue that there is a grave risk of spillover evidence prejudicing them, justifying their severance from all, or at least certain, other defendants. (ECF No. 144 at 5; ECF No. 145 at 3; ECF No. 158 at 3.)

Collins argues that his trial on Counts One and Two (conspiracy to possess with intent to distribute controlled substances, and using a communication facility in facilitating a felony, respectively) should be severed from the trial of his co-defendants due to the "gross disparity in evidence against [him]" and his alleged co-conspirators. (ECF No. 144 at 5.) Specifically he allegedly delivered 20.2 grams of fentanyl to the confidential sources and undercover officer, and officers recovered from his residence 21 grams of cocaine, 20.924 grams of fentanyl, and 1.227 grams of cocaine and methamphetamine (*id.* at 5-6; ECF No. 171 at 3, 4), but as a member of the conspiracy he is charged with distributing "400 grams or more of fentanyl, 500 grams or more of

cocaine[,] and 50 grams or more of [methamphatmine]" (ECF No. 144 at 6). Furthermore, he argues "the bulk of the evidence does not support Collins acting in concert with the [alleged co-conspirators]." (*Id.* at 5.)

Wilder similarly argues he is prejudiced because he is charged with one transaction with an undercover agent for 25.6 grams of fentanyl, and a joint trial would allow evidence of drugs pertaining to the other defendants to come in (400 grams or more of fentanyl, 500 grams or more of cocaine, and 50 grams or more of methamphetamine). (ECF No. 158 at 4-5; ECF No. 171 at 3; ECF No. 42 at 1-2.) Particularly, he points to alleged co-conspirators Marquan Owens, Kevin Tenner, and Davontae Armstrong as allegedly committing distinct crimes with greater substance weight or different substances, "and thus [he] should be tried separately[.]" (ECF No. 158 at 5.)

Madden argues she should be severed from all alleged co-conspirators for purposes of trial because, unlike the others, she is not alleged to have participated in any controlled buy or as having been present during any drug transaction. (ECF No. 145 at 3.) She argues that "[t]he overwhelming majority of the evidence does not support [her] being part of a drug conspiracy." (*Id.*)

The government responds that the defendants have not met their burden to show "actual prejudice" and that their joint trial would promote efficiency and serve the interests of justice by avoiding inconsistent verdicts. (ECF No. 171 at 17.) The

government disagrees that the defendants had minimal involvement in the alleged conspiracy. It asserts that Collins is the leader of the DTO, sourced the controlled substances to the DTO, provided the DTO members with drug phone lines, and directed DTO payment collections. (*Id.*) It asserts that Wilder, Collins's brother, was involved with the DTO for years. (*Id.* at 18.) And Madden shared a residence with Collins where multiple kilograms of controlled substance were cooked, mixed, and/or stored openly, she rented vehicles which Collins used in drug trafficking, she sent photos of controlled substances to Collins, and she assisted Collins with the financial aspects of the conspiracy. (*Id.* at 19.) Furthermore, the government argues the defendants' spillover prejudice arguments are not by themselves grounds for severance. (*Id.* at 17-19.)

"[A]s a basis for requiring severance, 'evidentiary spillover' has been rejected." *United States v. Abdelhaq*, 246 F.3d 990, 992 (7th Cir. 2001) (citing cases). Matters of "evidentiary spillover" can be, and routinely are, addressed with jury instructions. *See id.* Jury instructions sufficiently mitigate the risk that evidence of a defendant's association with others involved in unrelated criminal conduct will result in his conviction. *See United States v. Freland*, 141 F.3d 1223, 1227 (7th Cir. 1998); *United States v. Mohammad*, 53 F.3d 1426, 1432 (7th Cir. 1995).

In cases such as this, where the defendants were jointly indicted and charged with a conspiracy, there is a presumption in favor of conducting a joint trial. *Caliendo*,

910 F.2d at 437. The arguments of prejudice based on spillover evidence are not enough to meet the defendants' burden of showing actual prejudice. The government has outlined allegations of each defendant's involvement in the conspiracy, which is likely to involve overlapping evidence for each count. Trying the defendants together enhances judicial efficiency and provides "the jury [with] the best perspective on all the evidence and therefore increases the likelihood of a correct outcome." *Caliendo*, 910 F.2d at 437 (quoting *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987)). Whether the defendants were in fact involved in the conspiracy is an issue for trial.

Furthermore, most of the defendants, including those Collins and Wilder are most concerned of being joined with at trial, are on a resolution track and unlikely to proceed to trial, mooting much of the defendants' concerns regarding prejudice. (*See* ECF No. 171 at 8; ECF No. 172 at 2 (Collins's reply acknowledging this point).)

To the extent Collins, Wilder, and Madden remain concerned about being unfairly prejudiced by events in which they did not participate (i.e., drug transactions and drug possession), such evidence relates to distinct acts with specifically identified actors, making it "easy for the jury to compartmentalize the evidence involving" the different defendants. *See Stillo*, 57 F.3d at 557 (rejecting argument of "prejudicial spillover" from separate offenses). "If there is a risk of prejudice, measures such as proper limiting instructions … suffice to cure the risk that one defendant will be convicted on account of another defendant's actions." *See Mohammad*, 53 F.3d at 1432.

Collins, Wilder, and Madden have failed to carry their burden to show that spillover evidence warrants severance of the defendants under Rule 14(a). Therefore, the Court will deny their motions for severance based on prejudice from spillover evidence.

### 3.3.2. Sixth Amendment Prejudice

Hampton and Wilder both argue that severance is necessary to avoid violations of their right to confront witnesses against them. Hampton argues that statements of Collins and Owens are likely to be introduced as evidence against him and he would be prejudiced if he were unable to confront them. (ECF No. 143-1 at 6.) Wilder generally states that it appears that statements of some of his co-defendants may implicate him, making his joinder with such defendants a violation of his Sixth Amendment right to be confronted with the witnesses against him. (ECF No. 158 at 5.)

The Sixth Amendment Confrontation Clause guarantees the right to cross-examine a witness should their statement be introduced against a defendant's interest at trial. A potential violation of the Confrontation Clause exists if the government intends to admit a statement of one co-defendant against another defendant. *Bruton v. United States*, 391 U.S. 123, 127 (1968). But the Confrontation Clause does not bar the admission of a non-testifying defendant's confession where: (1) the confession has been modified to avoid directly identifying a non-confessing co-defendant; and (2) the court offers a

limiting instruction that jurors may consider the confession only with respect to the confessing defendant. *Samia v. United States*, 599 U.S. 635, 640 (2023).

Hampton's concern for a potential *Bruton* violation as to Owens is likely moot as Owens is on the resolution track and likely will not go to trial. (ECF No. 171 at 8.) Wilder's concern for potential *Bruton* violations is also likely largely mooted by the numerous alleged co-conspirators likely not proceeding to trial. The appropriate resolution of both Hampton's and Wilder's motion will be significantly impacted by who testifies at trial and how the evidence is introduced. Thus, the Court will deny without prejudice Hampton's (ECF No. 143) and Wilder's (ECF No. 158) motions to sever based on potential *Bruton* violations.

Similarly, Collins argues that, if he were tried with Tenner, Owens, Armstrong, or Jackson, he would be prejudiced by being denied the opportunity to call them as witnesses to confirm he did not conspire with them. (ECF No. 144 at 6.)

Collins does not articulate any statements of co-defendants he anticipates being presented against him to create a *Bruton* issue, and his Sixth Amendment right to present witnesses for his defense "is tempered by [the] witness's Fifth Amendment privilege not to provide incriminating testimony." *United States v. George*, 363 F.3d 666, 670-71 (7th Cir. 2004). Notwithstanding these issues, Collins's concern for potential Sixth Amendment violations pertains to alleged co-conspirators who have either since pleaded guilty (ECF Nos. 157, 175) or are on the resolution track (ECF No. 171 at 8).

Thus, the Court will deny Collins's motion to sever as to Tenner and Armstrong as moot and will deny without prejudice his motion to sever Owens and Jackson (ECF No. 144).

### 3.4. Hampton's Motion to Seal (ECF No. 142)

On February 16, 2024, upon motion of the government, the Court entered a protective order regulating the use of discovery materials in this case. (ECF No. 51.) The order states: "Copies of the discovery materials filed with the court must be filed either under seal or restricted to case participants in accordance with Gen. L.R. 79(d)[]to retain the confidential nature of the materials unless consent to filing in the public record is obtained from an attorney for the government." (ECF No. 51 at 3.)

Pursuant to the protective order, Hampton requests that the Court seal his motion for severance, memorandum of law supporting motion for severance, and Exhibit A attached thereto. (ECF No. 142 at 1.) Neither the government nor any of the other defendants requested sealing of their submissions.

In accordance with the protective order, the Court will grant Hampton's motion to seal as to Exhibit A, which consists of copies of discovery materials. The Court will deny the motion to seal as to Hampton's motion for severance and supporting memorandum, as these do not fall within the scope of the protective order.

**4. Conclusion**

For the reasons set forth above,

**IT IS THEREFORE ORDERED** that Wilder's Motion for a Bill of Particulars (ECF No. 118) is **denied**.

**IT IS THEREFORE RECOMMENDED** that Wilder's Motion to Dismiss Count 19 (ECF No. 159) be **denied**.

**IT IS FURTHER ORDERED** that Hampton's Motion to Seal (ECF No. 142) is **denied in part and granted in part**. The motion to seal is denied as to sealing Hampton's motion for severance and memorandum of law and is granted as to Exhibit A. Exhibit A, attached to Hampton's memorandum of law supporting the motion for severance (ECF No. 143), filed on January 14, 2025, is **SEALED** until further order of the court.

**IT IS FURTHER ORDERED** that Collins's (ECF No. 144), Madden's (ECF No. 145), and Wilder's (ECF No. 158) motions for severance based on prejudice from spillover evidence are **denied**.

**IT IS FURTHER ORDERED** that Hampton's (ECF No. 143) and Wilder's (ECF No. 158) motions for severance based on potential *Bruton* violations are **denied without prejudice**.

**IT IS FURTHER ORDERED** that Collins's motion to sever co-defendants based on a potential Sixth Amendment violation (ECF No. 144) is **denied as moot** as to

defendants Tenner and Armstrong and **denied without prejudice** as to defendants Owens and Jackson.

The parties' attention is directed to 28 U.S.C. § 636(b)(1)(A), (B), and (C) and Fed. R. Crim. P. 59(a) and (b)(2) whereby written objections to any order or recommendation herein or part thereof may be filed within fourteen days of service of this recommendation and order or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 6th day of May, 2025.

WILLIAM E. DUFFIN
U.S. Magistrate Judge